UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HASAN MD (A-Number: 221-307-220), | Case No.  2:26-cv-0282-DJC-JDP |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY, | |
| Respondent. | |

Petitioner Hasan MD entered the United States in 2025 and was quickly detained by immigration officers.  Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his detention, absent a bond hearing, violates the Fifth Amendment.  For the following reasons, I recommend that the petition be granted and that petitioner be provided a bond hearing.

**Background**

On January 22, 2025, petitioner entered the United States, coming from Bangladesh.  ECF No. 12 at 15.  Approximately two and a half hours thereafter, petitioner was detained by the Department of Homeland Security ("DHS") near the border.  *Id*.  DHS determined that petitioner "did not manifest a fear of return, express an intention to apply for asylum or related protection, express a fear of persecution or torture, or express a fear of return to their country or the country of removal."  *Id*.  That same day, petitioner was issued an expedited removal order under 8 U.S.C. § 1225(b)(1).  *Id*. at 17.

1

On March 24, 2025, notwithstanding its earlier finding, DHS determined that petitioner "has manifested a fear of torture" and referred him to U.S. Citizenship and Immigration Services for further assessment. *Id*. at 20.  There is no information in the record regarding whether petitioner received such an assessment or if he has applied for asylum.  On November 14, 2025, petitioner was placed in removal proceedings and issued a Notice to Appear.  *Id*. at 22.

**Procedural History**

On February 2, 2026, petitioner, initially proceeding pro se, filed a petition for writ of habeas corpus, ECF No. 1, and a motion to appoint counsel, ECF No. 3.  The court granted petitioner's request three days later, ECF No. 8, and appointed counsel appeared on February 10, 2026, ECF No. 9.  On March 12, 2026, respondent filed an answer to the petition.  ECF No. 12.  Petitioner filed a reply two days thereafter.  ECF No. 13.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that he is constitutionally entitled to a bond hearing.  ECF No. 1 at 16.  Respondent counters that petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1) and that, consequently, his due process claim fails.  ECF No. 12 at 2-7.  I address the statutory framework before analyzing petitioner's due process claim.

Under section 1225(b)(1), if an immigration officer determines that a noncitizen "who is arriving in the United States" is inadmissible, the officer "shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution."  8 U.S.C. § 1225(b)(1)(A)(i).  Section 1225(b) "applies primarily to aliens seeking entry into the United States," whereas 8 U.S.C. sections 1226(a) and (c) "authorize[] the Government to detain certain aliens already in the country pending the outcome of removal proceedings . . . ." *Jennings v. Rodriguez*, 583 U.S. 281, 289, 297 (2018).  "The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas*, 533 U.S. at 693.  This distinction, however, does not turn on whether a noncitizen has physically entered the United States. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) ("This rule would be meaningless if it became inoperative as soon as an arriving alien set foot on U. S. soil.").  Indeed, the Supreme Court has stated that "an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry.'" *Id*. at 140 (quoting *Zadvydas*, 533 U.S. at 693).

Here, at 6:00 a.m. on January 22, 2025, petitioner entered the United States on foot about fifteen miles west of Nogales, Arizona.  ECF No. 12 at 13.  Petitioner was then contacted by DHS at 8:28 a.m. *Id*.  While it is unknown exactly where petitioner was encountered, the immigration officer stated it was "near Nogales" and that petitioner "was apprehended within a group of 23 individuals." *Id*. at 14-15.  This evidence indicates that petitioner was detained "shortly after unlawful entry" and therefore "cannot be said to have 'effected an entry.'" *See Thuraissigiam*, 591 U.S. at 140.  In his reply, petitioner does not address respondent's argument that his detention is governed by section 1225(b); in fact, he appears to concede as such by arguing that detainees under this section nonetheless have a right to due process. *See* ECF No. 13 at 1-2.  Accordingly, I find that petitioner's detention is governed by section 1225(b)(1).

While petitioner's detention is mandated by statute, that does not resolve his claim that his detention violates the Fifth Amendment.[1] *See* ECF No. 1 at 16.  At present, there is no binding

---

[1] As respondent notes, the Supreme Court held that a noncitizen detained shortly after unlawful entry "has only those rights regarding admission that Congress has provided by statute"

authority that squarely addresses petitioner's due process claim.  In *Zadvydas*, the Supreme Court addressed a challenge to prolonged detention in a different context—under 8 U.S.C. § 1231(a)(6)—and held:

> We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. Consequently, for the sake of uniform administration in the federal courts, we recognize that period.  After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient.

533 U.S. at 701 (internal quotation marks and citation omitted).

However, in *Demore v. Kim*, the Supreme Court rejected a due process challenge to section 1226(c)—which, like section 1225(b), mandates detention—and distinguished *Zadvydas* because, unlike indefinite detention pending removal under section 1231(a)(6), mandatory detention under section 1226(c) has a "definite termination point," i.e., the conclusion of removal proceedings.  538 U.S. 510, 529 (2003).  The Court held that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id*. at 531.

After *Demore*, the Court of Appeals held that detention under sections 1225(b), 1226(a), and 1226(c) has an implicit six-month limit, at which time the government must justify continued detention by clear and convincing evidence at a bond hearing.  *Rodriguez v. Robbins*, 804 F.3d 1060, 1078-85 (9th Cir. 2015).  But the Supreme Court reversed, finding that none of the statutory provisions can reasonably be read to limit detention to six months.  *Jennings*, 583 U.S. at 297-306.  As the Court of Appeals noted on remand, however, the Supreme Court "declined to reach the constitutional question" and "instead chose to answer only the question whether the statutory text itself included a limit on prolonged detention or a requirement of individual bond

---

and "the Due Process Clause provides nothing more."  *See* ECF No. 12 at 7 (quoting *Thuraissigiam*, 591 U.S. at 140).  However, "*Thuraissigiam*'s discussion of due process is necessarily constrained to challenges to admissibility to the United States." *Padilla v. U.S. Immigr. & Customs Enf't,* 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023).  Accordingly, "[w]hile *Thuraissigiam* limits an arriving noncitizen's due process rights in regard to admission, a petitioner may still assert a due process claim against prolonged mandatory detention without a bond hearing."  *Singh v. Noem*, No. 26-cv-0265-GPC-BLM, 2026 WL 206716, at *5 (S.D. Cal. Jan. 27, 2026).

4

hearings." *Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018).

"In the wake of *Jennings*, district courts have grappled with how to address due process challenges to prolonged mandatory detention under § 1225(b)." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019). Nonetheless, "[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Id*. (collecting cases) (internal quotation marks omitted).

Because neither the Court of Appeals nor the Supreme Court have provided guidance explaining when a noncitizen's mandatory detention under section 1225(b) becomes unconstitutional, courts in this Circuit have used varied tests to determine whether due process requires a bond hearing. The three main tests are: (1) the general due process assessment under *Mathews v. Eldridge*, 424 U.S. 319 (1976); (2) the test announced in *Banda*, 385 F. Supp. 3d at 1118; and (3) the test announced in *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022), where the court determined whether prolonged mandatory detention under section 1226(c) violates the Due Process Clause by considering three factors: "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government."[2]

Neither party addresses the various tests, and instead they both default to a *Mathews* assessment. *See* ECF No. 12 at 7; ECF No. 13 at 2. In the absence of binding authority instructing the court which test to employ, I analyze petitioner's claim under the *Lopez* test.[3] "While the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly probative of whether prolonged mandatory

[2] The *Lopez* test utilizes three factors from the *Banda* test. *Lopez*, 631 F. Supp. 3d at 877-79. In *Banda*, to determine whether prolonged mandatory detention under section 1225(b) violates the Due Process Clause, the court also considered "the conditions of detention" and "the likelihood that the removal proceedings will result in a final order of removal." *Banda*, 385 F. Supp. 3d at 1118 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019)).

[3] If I analyzed petitioner's claim under *Mathews*, I still would conclude that petitioner is entitled to a bond hearing because: (1) he has a significant private interest that is affected by detention; (2) the risk of an erroneous deprivation is high without a bond hearing; and (3) the government's interest in withholding a bond hearing is relatively low. *See* 424 U.S. at 335.

5

detention has become unreasonable in a particular case." *Banda*, 385 F. Supp. 3d at 1118. Similarly, the two factors employed in *Banda* but not *Lopez*—the conditions of detention and the likelihood that the removal proceedings will result in a final order of removal—"are not particularly suited to assisting the Court in determining whether detention has become unreasonable and due process requires a bond hearing." *Lopez*, 631 F. Supp. 3d at 879. Moreover, "[t]hough *Lopez* concerned a due process challenge to mandatory detention under § 1226(c), the factors enumerated there are, in essence, a truncated version of the factors enumerated in *Banda*, which concerned mandatory detention under § 1225(b)(1)." *Doe v. Andrews*, No. 1:25-cv-0333-JLT-HBK, 2026 WL 797694, at *10 (E.D. Cal. Mar. 23, 2026). As noted, courts in this Circuit have employed the *Lopez* test to determine whether due process requires a bond hearing for a noncitizen detained under section 1225(b)(1). *See id*. (collecting cases); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-cv-0098-SAB, 2025 WL 2099343, at *6 n.6 (E.D. Cal. July 25, 2025) (applying the *Lopez* test where both parties only addressed the *Mathews* test in their briefing).

Accordingly, petitioner's claim is analyzed under the three factors articulated in *Lopez*: (1) the total length of detention to date; (2) the likely duration of future detention; and (3) the delays in proceedings caused by petitioner and the government. I consider each factor in turn.

First, district courts in this Circuit have found that the total length of detention weighs in the petitioner's favor where it exceeds one year. *See, e.g.*, *Singh*, 2026 WL 206716, at *5; *Baishymyrov v. Warden of Golden State Annex Det. Facility*, No. 1:25-cv-1658-DMC, 2026 WL 145644, at *7 (E.D. Cal. Jan. 20, 2026). "In general, as detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Gonzalez v. Bonnar*, No. 18-cv-5321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) (collecting cases) (cleaned up). Because petitioner has been detained for fourteen months, this factor weighs squarely in his favor.

Second, the court must determine "how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings— including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (cleaned up).

Petitioner was placed in removal proceedings on November 14, 2025.  ECF No. 12 at 10.  The record indicates that there have been two master calendar hearings in petitioner's case—one on December 15, 2025 and another on March 25, 2026.  *Id*. at 10, 29.  As such, petitioner's removal proceedings are seemingly in their early stages.

Moreover, some courts have found that the possibility of an appeal warrants weighing this factor in the petitioner's favor.  *See, e.g.*, *Arido-Sorro v. Garland*, No. 23-cv-0842-PHX-JAT, 2024 WL 4393264, at *4 (D. Ariz. Sept. 5, 2024), *report and recommendation adopted*, 2024 WL 4834413 ("Courts have recognized that the possibility of prolonged appeals weighs in favor of finding that continued detention without a bond hearing violates due process.").  While there is no evidence in the record to determine the likelihood of such appeal, or how long such process would take, petitioner is entitled to some deference based on the prospect of an appeal increasing the length of the removal proceedings.  Additionally, as plaintiff observes, his "detention could be delayed for a substantially longer period" on account of his asylum request.  *See* ECF No. 13 at 2.

While I "cannot definitively determine the duration of petitioner's future detention," I find that he will likely "face many more months and potentially years in detention," and thus this factor weighs in his favor.  *See Belqasim v. Bostock*, No. 2:25-cv-1282-LK-TLF, 2025 WL 3466971, at *7 (W.D. Wash. Oct. 28, 2025), *report and recommendation adopted*, 2025 WL 3170929.

Third, there is no information in the record regarding any delays in proceedings.  Accordingly, this factor is neutral.

Overall, while the third factor is neutral, the total length of detention, "which is the most important factor," *Banda*, 385 F. Supp. 3d at 1118, and the likely duration of future detention weigh strongly in petitioner's favor.  Accordingly, a weighing of the *Lopez* factors supports a finding that petitioner's detention, absent a bond hearing, violates his Fifth Amendment Due Process rights.  Given this finding, I must determine the appropriate relief.

Petitioner requests a bond hearing, and respondent argues that "the proper course is to order that such hearing occur."  *See* ECF No. 12 at 8; ECF No. 1 at 17.  I agree with other courts to have addressed this issue that, where mandatory detention has become prolonged, "the

7

appropriate remedy is a bond hearing before an immigration judge rather than immediate release." *See Lopez*, 631 F. Supp. 3d at 882.

Respondent argues that, at petitioner's bond hearing, "the Court should require the burden to be on Petitioner, not the government." ECF No. 12 at 8. I disagree. In *Martinez v. Clark*, the petitioner was subject to mandatory detention under section 1226(c) and, after he filed a habeas petition, the district court ordered that petitioner receive a bond hearing where the government must "show by clear and convincing evidence that [he] presents a flight risk or a danger to the community." 124 F.4th 775, 780 (9th Cir. 2024). On appeal, the petitioner claimed that the Board of Immigration Appeals ("BIA") had applied the wrong burden of proof. *Id*. at 785. The Court of Appeals, however, held that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that [petitioner] is a danger to the community." *Id*. In the wake of *Martinez*, district courts in this Circuit have held that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." *See Lopez*, 631 F. Supp. at 882 n.9 (collecting cases). Accordingly, the government shall bear the burden of proof at petitioner's bond hearing.

### Conclusion

Based on the foregoing, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Petitioner (A-Number: 221-307-220) be provided a bond hearing within five days of the date of the court's order. At this hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and petitioner shall be allowed to have counsel present.

3. Respondent be ordered to file a status report, within five days of the bond hearing, confirming that the hearing occurred.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the

court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.


Dated:    April 10, 2026        _____
                                JEREMY D. PETERSON
                                UNITED STATES MAGISTRATE JUDGE